JAMES H. HEESACKER, APPELLANT, V.
TWILA D. HEESACKER, APPELLEE.
629 N.W. 2d 558

Filed July 13, 2001.   No. S-00-309.

Michael F. Pistillo and Mark A. Steele, of Pistillo & Pistillo, P.C., for appellant.

Ronald E. Frank and Kelly K. Brandon, of Sodoro, Daly & Sodoro, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

James H. Heesacker appeals from a decree of dissolution. The only issue on appeal is James' child support obligation. The district court used the sole custody worksheet instead of the joint custody worksheet to determine James' child support obligation. We determine that James' liberal visitation schedule was not a joint physical custody arrangement. Accordingly, the trial court's use of the sole custody worksheet was correct. We affirm.

## ASSIGNMENTS OF ERROR

James assigns that the district court erred in (1) failing to use a joint custody worksheet to determine his child support obligation, (2) failing to find that he paid an equal amount of day-to-day expenses for his child under the joint physical custody arrangement, and (3) finding that *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999), required him to have physical custody at least 40 percent of the time before the joint physical custody guidelines could be used for calculating his child support obligation.

## BACKGROUND

During their marriage, James and Twila D. Heesacker had one child, Shannon, born January 12, 1990. They separated in 1998, and James filed for divorce in 1999. Through mediation, the parties agreed to joint custody. At trial, counsel for the parties recited their stipulations regarding the joint custody arrangements. James was to have custody of Shannon on alternating weekends from Friday after school until Monday morning and from Wednesday after school until Thursday morning. In addition, James was to have custody an additional Friday night each month and one other day each month at a time to be

agreed upon by the parents. The visitation plan also called for each parent to have custody of Shannon for one-half of her summer and winter breaks from school, with holidays and birthdays split on an alternating yearly schedule.

At the time of trial, James' gross monthly income was $1,617. Twila testified that her gross monthly income was approximately $2,980. James submitted four joint custody worksheets to the court for calculating the parties' child support obligations. The first two worksheets were based on James having physical custody of Shannon for 12 days a month, which he calculated to be 39.45 percent of the time. The other two worksheets were based on James having physical custody of Shannon 10 days a month, which he calculated to be 32.88 percent of the time. Twila submitted a single worksheet based on sole custody of Shannon.

The district court found that "the evidence clearly shows that [James] spends no greater amount of time than 35% with the minor child." The court further found that it could not use a joint custody worksheet for determining James' child support obligations because he did not have physical custody of Shannon for at least 40 percent of the time as required by *Elsome v. Elsome, supra.*

## STANDARD OF REVIEW

The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000); *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001); *Riggs v. Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001).

## ANALYSIS

James argues the district court erred by failing to use the joint custody worksheet under the Nebraska Child Support

Guidelines because he had joint physical custody of Shannon. Twila argues that the sole custody worksheet is appropriate because she has physical custody of Shannon and is responsible for the majority of her day-to-day care and expenses.

At the close of the trial, the court found that James spent 12 days a month with Shannon and that the evidence on the amount of time was undisputed. The court further stated that the time division between Twila and James was almost exactly a 65/35-percent split, a finding that was repeated in the dissolution decree. In its order, the court stated that *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999), required a parent to have physical custody of his or her child at least 40 percent of the time before the joint custody guidelines could be used for child support calculations.

In *Elsome*, we clarified that courts in joint custody cases are to differentiate between joint legal custody and joint physical custody. We directed trial courts

> to employ worksheet 3 [the joint custody worksheet] in cases of joint physical custody unless a sound reason not to do so is established by the record, in which case the trial court shall indicate in the findings portion of the child support decree or order or on worksheet 5 the reason why worksheet 3 was not used.

*Id.* at 900, 601 N.W.2d at 545. We defined joint legal custody as the " ' "authority and responsibility for making 'major' decisions regarding the child's welfare," ' " and joint physical custody as the " 'joint "responsib[ility] for 'minor' day-to-day decisions" and the exertion of continuous physical custody by both parents over a child for significant periods of time.' " *Id.* at 898, 601 N.W.2d at 544.

The evidence in *Elsome* showed that the father was entitled to have his support obligation determined by a joint custody worksheet when he had physical custody of the children 38 to 40 percent of the time. See *id.* The parents in *Elsome* divided their time with their children on a 14-day cycle, which generally provided for the mother to have physical custody of the children 4 days a week and the father to have custody the other 3 days a week. See *id.* The parents had agreed to an alternating, continuous physical custody arrangement. In such cases, both parents share equally in the responsibility for their child's day-to-day care.

■ In this case, the district court found that James had visitation with Shannon 12 days a month. Under that finding, James would have physical custody of Shannon 144 days a year, or 39.45 percent of the time, as he reported on his joint custody worksheets. Thus, if the percentage of overnight visits a year were the test under *Elsome*, the district court would have erred in its finding that the joint custody worksheet should not have been used in this case. But *Elsome* was not decided on the basis of how many overnight visits a noncustodial parent has with his or her children.

In distinguishing *Elsome*, the Nebraska Court of Appeals recently considered a visitation plan similar to the one in this case. See *Pool v. Pool*, 9 Neb. App. 453, 613 N.W.2d 819 (2000). In *Pool*, the father had custody of his children every other weekend, plus an additional weekend day per month, weekday visitation two times a week from 4 to 8 p.m., alternating holidays, and extended summer visitation continuously from June 1 to July 31 each year. See *id*. The district court found that the father had physical custody for 33 percent of the time and determined his support obligation based on the joint custody worksheet. The Court of Appeals reversed. It determined that the evidence demonstrated that the father had been granted the " 'typical' weekend, holiday, and summer visitation rights," which did not satisfy the requirements of joint physical custody. *Id*. at 458, 613 N.W.2d at 824.

The New Jersey Supreme Court came to the same conclusion when it was asked to consider what constitutes traditional custody and visitation arrangements. See *Pascale v. Pascale*, 140 N.J. 583, 660 A.2d 485 (1995). In *Pascale*, the parents were granted joint custody with a visitation schedule for the father that included two evenings a week, a 24-hour overnight visit every weekend, and alternating holidays. In the summer, the father had overnight visits for two weekdays as well. See *id*. The court noted that "[a]lthough there is no established norm for [joint physical] custody, experts cite common schedules for a child within a joint physical custody framework as spending three entire days with one parent and four entire days with another parent or alternating weeks or even years with each parent." *Id*. at 596-97, 660 A.2d at 492.

The *Pascale* court determined that joint physical custody means "the child lives day in and out with both parents on a rotating basis. Numerous 'parenting times' with a child do not constitute joint physical custody." 140 N.J. at 597, 660 A.2d at 492. To make the distinction clear, the court referred to *McCown v. McCown*, 277 N.J. Super. 213, 649 A.2d 418 (1994), where the noncustodial parent had custody on "alternate weekends, one night per week, and alternate major holidays, including holidays like Labor Day and extended school holidays." *Pascale v. Pascale*, 140 N.J. at 597, 660 A.2d at 492. The court cited that case as an example of " 'liberal visitation' " with primary physical care vested in one parent. *Id.* Compare, *In re Marriage of Phillips*, 244 Ill. App. 3d 577, 615 N.E.2d 1165, 186 Ill. Dec. 108 (1993) (rejecting noncustodial mother's argument that deviation from guidelines was proper because of income disparity between parents and because children were with her two evenings a week, alternate weekends, one-half of summer break, and alternate holidays); *State ex rel. Lara v. Lara*, 495 N.W.2d 719 (Iowa 1993) (affirming trial court's finding that father's 50-percent visitation schedule did not justify a deviation from guidelines where deviation was allowed to provide for needs of children and do justice between parties); *Anzalone v. Anzalone*, 449 Pa. Super. 201, 673 A.2d 377 (1996) (reversing trial court's downward deviation from guidelines for father who had his children 11 out of 28 days, or 40 percent of time, under guidelines that permitted such deviation if noncustodial parent spent unusual amount of time with children).

This case is similar to both *Pool v. Pool*, 9 Neb. App. 453, 613 N.W.2d 819 (2000), and *Pascale v. Pascale, supra.* While James has a liberal visitation schedule, Twila is still the primary caregiver. See *Pascale v. Pascale, supra.* The district court in this case found that there was no evidence that James was paying for an equal amount of Shannon's day-to-day expenses. In addition, we note that it is Twila who sees to it that Shannon is prepared and ready for school during 80 percent of the school year.

Although James argues that he incurs his own expenses for the times that Shannon spends with him, he has not argued that he incurs more expenses than any other noncustodial parent. After a divorce, both parents retain responsibility for their child's needs

regardless of their custody arrangements. But Twila is still the parent who deals most with Shannon's needs and the physical and emotional demands of her day-to-day care. We conclude that the visitation plan adopted by the district court is a grant of physical custody to Twila, with a liberal visitation schedule for James. Accordingly, the trial court was correct in calculating James' child support based on the sole custody worksheet.

AFFIRMED.