Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/23/2018 09:12 AM CDT

State of Nebraska on behalf of Kaaden S.,
a minor child, appellee, v. Jeffery T.
appellant, and Mandy S., appellee.

___ N.W.2d ___

Filed October 16, 2018.    No. A-17-1210.

1. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Minors: Names: Appeal and Error.** An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court.

3. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

4. **Paternity: Attorney Fees: Appeal and Error.** In a paternity action, attorney fees are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge, and absent such an abuse, the award will be affirmed.

5. **Modification of Decree: Divorce: Child Custody.** If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

- 422 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

6. **Child Custody.** The amount of time children spend with each parent is less important than how the time is allocated when determining whether joint physical custody exists.

7. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

8. **Child Custody.** Joint physical custody should be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.

9. **Child Custody: Evidence.** When considering joint custody, the focus is on the parents' ability to communicate with each other and resolve issues together.

10. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

11. **Child Support: Rules of the Supreme Court: Appeal and Error.** The Nebraska Child Support Guidelines, specifically Neb. Ct. R. § 4-215(B) (rev. 2011), estimate $480 as an ordinary amount of nonreimbursed medical expenses, and that figure is then subsumed within the amount of child support that is ordered.

12. **Minors: Names.** The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child.

13. **Minors: Names: Proof.** The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests.

14. **Minors: Names.** In Nebraska, there is no preference for a surname—paternal or maternal—in name change cases; rather, the child's best interests is the sole consideration.

15. ____: ____. Nonexclusive factors to consider in determining whether a change of surname is in a child's best interests are (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and

- 423 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit.

16. **Contempt: Sentences.** A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance.

17. **Criminal Law: Contempt: Sentences.** A criminal sanction is punitive; the sentence is determinate and unconditional, and the contemnors do not carry the keys to their jail cells in their own pockets.

18. **Contempt.** In order for the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end.

19. ____. A fine is an appropriate sanction in a civil contempt proceeding so long as the contemnor may avoid the fine by complying with the court's order.

20. ____. An unconditional fine is not an appropriate sanction in a civil contempt proceeding because the contemnor is unable to avoid the fine through his or her conduct.

Appeal from the District Court for Jefferson County: Ricky A. Schreiner, Judge. Affirmed in part, vacated in part, and in part reversed and remanded with directions.

Ronald R. Brackle for appellant.

Angelica W. McClure, of Kotik & McClure Law, for appellee Mandy S.

Pirtle, Riedmann, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

Jeffery T. appeals the order of the district court for Jefferson County which awarded custody, parenting time, and child support regarding the minor child Jeffery shares with Mandy S. The court also held Mandy in contempt of court

- 424 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

and imposed a fine of $50. For the reasons that follow, we affirm in part, vacate in part, and in part reverse and remand with directions.

## BACKGROUND

Jeffery and Mandy are the parents of a minor child, Kaaden S., born in June 2014. They were never married and did not have a relationship prior to conception of the child. Jeffery was present at the hospital on the day Kaaden was born, but he claims that Mandy would not allow him to be part of Kaaden's life after that time and repeatedly insisted that he was not Kaaden's father. On the other hand, Mandy alleges that she notified Jeffery when she learned she was pregnant but that he refused to be involved other than attending one medical appointment and Kaaden's birth.

In August 2014, Jeffery contacted an attorney with the Nebraska Department of Health and Human Services in order to commence the present paternity action. Thus, the State filed a complaint on February 17, 2015, asking the court to establish paternity of Kaaden and order child support. Jeffery filed a cross-claim requesting that the court enter a custody order and change Kaaden's last name from Mandy's surname to Jeffery's surname. Genetic testing subsequently confirmed that Jeffery was Kaaden's biological father.

During the pendency of this action, Jeffery continued to have difficulty visiting Kaaden. In October 2015, Mandy began allowing Jeffery to have supervised visits with Kaaden for 1½ hours per week. At some point in 2015, Jeffery began paying voluntary child support to Mandy. In June 2016, the district court entered a temporary order ordering Jeffery to pay $694 per month in child support and awarding him supervised visitation for 60 days. After the initial 60 days, Mandy was to have primary physical custody and Jeffery received unsupervised parenting time every other weekend from Friday at 6 p.m. until Sunday at 6 p.m. and each Wednesday from 5 until 7 p.m. Despite the temporary order, Mandy refused

- 425 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

to allow Jeffery to have overnight visits with Kaaden, and at some point, she terminated Jeffery's Wednesday evening visits as well.

Around the time Jeffery's contact with Kaaden increased, Kaaden began exhibiting escalating behavior problems, such that Mandy began taking him to see a counselor in November 2016. The counselor initially diagnosed Kaaden with "separation trauma and extreme anxiety," but testified at trial that Kaaden experienced significant growth during the 5 months that she worked with him. She also opined that Mandy had "significant unresolved issues" toward Jeffery and recommended that Mandy participate in treatment to address her emotional trauma. The counselor believed, as of the time of trial, that it was best for Kaaden that contact between Jeffery and Mandy be limited.

At the same time Kaaden's behavior began changing, the already tense relationship between Jeffery and Mandy also started to deteriorate. On November 30, 2016, Jeffery audio recorded an exchange with Mandy when he was returning Kaaden from a visit. During the exchange, Mandy can be heard yelling at Jeffery and belittling his attempts at building a relationship with Kaaden. Mandy made clear that she did not want Jeffery in Kaaden's life and believed Jeffery's efforts at being a father to Kaaden were harmful to the child. At the conclusion of the recording, Mandy sprayed Jeffery in the face with pepper spray and apparently called the police on him. Jeffery was met at his residence by two sheriff's deputies, but after Jeffery played the recording for them, they did not arrest him. At trial, Mandy acknowledged that after the November 2016 incident, she did not try to communicate with Jeffery about Kaaden and said that it became even more difficult for the two of them to communicate at all.

In January 2017, Jeffery filed a motion to hold Mandy in contempt of court for denying him the parenting time awarded in the temporary order and refusing to provide him with Kaaden's medical information. Trial on the issues of custody,

- 426 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

parenting time, child support, and the contempt motion was held on May 9. At trial, Jeffery explained that he was requesting primary physical custody of Kaaden, and he believed that such an arrangement would be in Kaaden's best interests. He testified that if awarded custody, he would support Kaaden's relationship with Mandy and adhere to any visitation order the court imposed.

The evidence established that throughout the case, Mandy would allow Jeffery some daytime visits with Kaaden, but she permitted only two weekends of overnight visitation, both of which occurred in April 2017. The evidence additionally established that after the November 2016 recorded incident, she refused to allow Jeffery to see Kaaden again until December 24 and 31, and further denied him the extended overnight holiday visits allocated to him in the temporary order. Mandy admitted that she did not adhere to the temporary order, but she said that she denied overnight visits because Kaaden was scared and not ready for them and that she was following the recommendations of Kaaden's therapist. During the pendency of the matter, the parties attempted mediation twice, but were unsuccessful in reaching an agreement. Mandy admitted that she refused to even sit in the same room as Jeffery at both mediation sessions.

After trial, the district court entered an order on custody, parenting time, child support, and contempt. The court observed that Mandy loves Kaaden but that she wants nothing to do with Jeffery, nor does she want Kaaden to have anything to do with Jeffery. The court recognized that Jeffery complained that Mandy intentionally withheld his parenting time from him and was openly hostile during exchanges of Kaaden. The court cited the November 2016 exchange as an example of Mandy's hostility toward Jeffery, noting that Mandy "launched into a vulgar and accusatory tirade directed at Jeffery before spraying him in the face with pepper spray." The district court found that Mandy had been Kaaden's primary caregiver since birth, but the fact that she has had more time to parent

- 427 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

Kaaden and may have developed a stronger relationship with him appears entirely due to her absolute unwillingness to allow Jeffery to be involved in Kaaden's life. Nonetheless, the court determined that in the limited time Jeffery has had with Kaaden, he has managed to form a relationship and bond with Kaaden and parents him appropriately. The court found that although Kaaden "fusses" during exchanges with Jeffery, Kaaden appears to adjust well once in Jeffery's care, and that both parents adequately provide for Kaaden's welfare and appear concerned with his continued development.

The district court concluded that Jeffery was a fit and proper person to have custody of Kaaden, but that the complicating factor in this case is the lack of a relationship between Jeffery and Mandy, as well as Mandy's "obvious resentment" toward Jeffery and the situation. The court found that Mandy appears to do everything she can to limit or monitor Jeffery and Kaaden's relationship and has done everything in her power to prevent Jeffery from being a father to Kaaden. Although it is obvious that Mandy loves Kaaden, the court observed that her anger toward Jeffery "clouds her judgment" regarding what is in Kaaden's best interests at times, especially when it comes to allowing Jeffery to be involved in Kaaden's life.

The district court appointed a guardian ad litem (GAL) in April 2017, and in its order, the court found that the GAL's report was thorough and well-reasoned. The court observed the GAL reported that Mandy's obstructive behavior continued after trial and that it was her opinion those behaviors were detrimental to Kaaden's well-being. The court observed that the GAL recommended placing primary custody of Kaaden with Jeffery and that she felt "'completely confident'" in that recommendation.

The district court iterated that during the pendency of this matter, it attempted to encourage Mandy "to see past her hurt, fear, and anger" and allow Kaaden to have Jeffery in his life, but it appeared that her behavior had not changed and that she was still placing "more value on her hate and anger than she

- 428 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

[was] on Kaaden's ability to have a father actively engaged in his life."

Based on the foregoing and with the "firm belief that doing so best ensures compliance with the order of custody so that Kaaden can enjoy the full benefits of having both parents involved in his life to the greatest degree possible," the court concluded that it was in Kaaden's best interests to place his primary legal and physical custody with Jeffery subject to liberal parenting time with Mandy. The parties were therefore awarded alternating weekly parenting time. The court utilized the joint physical custody worksheet and ordered Jeffery to pay child support of $93 per month and the first $480 of Kaaden's nonreimbursed health care costs. The court's order did not specifically deny Jeffery's request to change Kaaden's last name, but the order states that any request for relief by any party not specifically granted by the order was denied. The district court also found Mandy in willful contempt of the court's temporary order and imposed a fine of $50.

Thereafter, Jeffery filed a motion to alter or amend, which the court denied. Jeffery timely appeals to this court.

## ASSIGNMENTS OF ERROR

Jeffery assigns that the district court erred in (1) awarding in substance joint physical custody; (2) ordering him to pay child support, using the joint custody worksheet, and ordering him to pay the first $480 of Kaaden's health care costs; (3) failing to order Mandy to pay child support; (4) failing to change Kaaden's last name; (5) failing to fine Mandy in a greater amount for her contempt of court; and (6) refusing to award him attorney fees.

## STANDARD OF REVIEW

[1] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review,

- 429 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Derby v. Martinez*, 24 Neb. App. 17, 879 N.W.2d 58 (2016).

[2] An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court. *State on behalf of Connor H. v. Blake G.*, 289 Neb. 246, 856 N.W.2d 295 (2014).

[3] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

[4] In a paternity action, attorney fees are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Drew on behalf of Reed v. Reed*, 16 Neb. App. 905, 755 N.W.2d 420 (2008). Absent such an abuse, the award will be affirmed. *Id*.

## ANALYSIS

### Joint Physical Custody

Jeffery first argues that the court abused its discretion in essentially awarding joint physical custody. We agree and determine that even though the district court stated that it was awarding primary physical custody to Jeffery, the court awarded de facto joint physical custody. We additionally conclude that an award of joint physical custody was an abuse of discretion given our de novo review of the record and the court's factual findings. We therefore reverse that portion of the court's order and remand the cause for a modification of

- 430 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

Mandy's parenting time consistent with an award of primary physical custody to Jeffery.

[5] If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement. *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013). "Joint physical custody means mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time." Neb. Rev. Stat. § 43-2922(12) (Reissue 2016).

[6] In *Hill v. Hill, supra*, this court outlined several cases discussing how to distinguish joint physical custody from sole physical custody with liberal parenting time. We observed that Nebraska case law establishes that the amount of time children spend with each parent is less important than how the time is allocated when determining whether joint physical custody exists. *Id*. We recognized that joint physical custody has been defined as joint responsibility for minor day-to-day decisions and the exertion of continuous physical custody by both parents for significant periods of time. *Id*., citing *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999). We noted that this type of arrangement is distinguishable from that where one parent enjoys liberal parenting time such as alternating weekends, one overnight visit per week, one additional overnight visit on the off weekends, and additional breaks and holidays. See, *Hill v. Hill, supra*; *Drew on behalf of Reed v. Reed, supra*. In *Hill*, we concluded that the physical custody arrangement amounted to joint physical custody where the children lived day in and day out with both parents on a rotating basis, and each parent was equally responsible for the physical and emotional demands of the children's day-to-day care.

The same is true in the present case. Despite the district court's characterization of the arrangement, Jeffery and Mandy are each responsible for the day-to-day care of Kaaden during the week they are exercising their parenting time. This is

- 431 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

the standard joint physical custody arrangement. Each parent is equally responsible for getting Kaaden to and from child-care while the parents are working and for handling his daily emotional demands. As a result, the arrangement in this case is properly characterized as joint physical custody, rather than primary custody with liberal parenting time. Even Mandy concedes in her brief that "[w]hile the court referred to the arrangement in this case as sole custody, the time allotted meets the statutory definition of joint custody because each party has equal continuous blocks of parenting time with the child." Brief for appellee at 18. We must now determine whether an award of joint physical custody was an abuse of the court's discretion.

[7-9] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Erin W. v. Charissa W.*, 297 Neb. 143, 897 N.W.2d 858 (2017). Joint physical custody should be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars. *Id*. When considering joint custody, the focus is on the parents' ability to communicate with each other and resolve issues together. *Aguilar v. Schulte*, 22 Neb. App. 80, 848 N.W.2d 644 (2014).

In the instant case, the district court found that Jeffery was a fit and proper person to have custody of Kaaden. The court observed that Jeffery has a suitable residence and stable employment and that he encourages healthy behaviors with Kaaden. The court also recognized Mandy's resentment toward Jeffery and found that "she has done everything in her power to prevent Jeffery from being a father to Kaaden." The court found that the GAL issued a thorough and well-reasoned

- 432 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

report, which reported that Mandy's "obstructive behavior" continued and was "detrimental to Kaaden's emotional well-being." Thus, the GAL recommended awarding primary physical custody of Kaaden to Jeffery and felt "completely confident" in that recommendation.

The district court iterated that it "tried to encourage Mandy to see past her hurt, fear, and anger" and allow Kaaden to have Jeffery in his life, but Mandy did not heed the court's advice as it "appears she is still putting more value on her hate and anger than she is on Kaaden's ability to have a father actively engaged in his life and the benefits of that relationship." Therefore, when considering all of the evidence and circumstances of this case, including Mandy's defiance of the temporary order, so that Kaaden can enjoy the full benefits of having both parents involved in his life to the greatest degree possible, the district court concluded that it was in Kaaden's best interests to place his primary legal and physical custody with Jeffery subject to liberal parenting time with Mandy.

[10] We consider and give weight to the district court's factual findings and concerns, which are well-founded and supported by the record. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). Notwithstanding the temporary order awarding Jeffery overnight parenting time with Kaaden every other weekend and alternating Wednesday evenings, Mandy refused to allow Jeffery his allotted parenting time. She also refused to provide Jeffery with Kaaden's medical information despite his numerous requests. The parties attempted mediation on two separate occasions, but Mandy refused to even sit in the same room as Jeffery on each occasion. And her anger and hatred of Jeffery is evident in the recorded exchange. She made clear that she did not want Jeffery to be part of Kaaden's life and that she

- 433 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

believed his desire to exercise his parenting time was harming Kaaden.

The undisputed evidence also establishes that Jeffery and Mandy have virtually no ability to communicate with each other regarding Kaaden. Mandy acknowledged at trial that it has become more difficult for them to communicate at all, and she did not believe they could communicate well enough to make joint custody successful. Kaaden's counselor believed it was best for Kaaden that contact between Jeffery and Mandy be limited at that time. And the district court's order reports that the GAL was concerned that "[Mandy] and her mother feed off one another in their loathing of Jeffery and are unable to give him credit for anything he does right when it comes to Kaaden."

Therefore, considering the foregoing, the evidence and the district court's factual findings do not support a conclusion that joint physical custody is in Kaaden's best interests. To the contrary, the district court determined that it was in Kaaden's best interests to place his legal and physical custody with Jeffery, and we find that decision was not an abuse of discretion. Accordingly, we reverse the parenting plan ordered in this case, and remand the cause to the district court for implementation of a parenting time arrangement whereby Jeffery has primary physical custody subject to Mandy's parenting time.

## CHILD SUPPORT AND HEALTH CARE EXPENSES

Given our conclusion that the district court abused its discretion in awarding de facto joint physical custody, we also find that the court's use of the joint custody worksheet in order to calculate child support was in error. We therefore reverse the child support award and remand the cause for recalculation using the appropriate worksheet.

[11] Likewise, we reverse the requirement that Jeffery pay the first $480 of Kaaden's nonreimbursed health care costs. Children's health care expenses are specifically included in

- 434 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

the guidelines amount of up to $480 per child per year. See Neb. Ct. R. § 4-215(B) (rev. 2011). As such, the guidelines estimate $480 as an ordinary amount of such nonreimbursed medical expenses, and that figure is then subsumed within the amount of child support that is ordered. *State on behalf of Martinez v. Martinez-Ibarra*, 281 Neb. 547, 797 N.W.2d 222 (2011). All nonreimbursed health care costs in excess of $480 per child per year shall be allocated to the obligor parent. § 4-215(B). Thus, we reverse this portion of the order, and upon recalculation of child support, the district court shall also allocate nonreimbursed health care costs in excess of $480 accordingly.

## Name Change

Jeffery assigns that the district court erred in denying his request to change Kaaden's name from Mandy's last name to Jeffery's last name. We find no merit to this argument.

[12,13] The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child. *State on behalf of Connor H. v. Blake G.*, 289 Neb. 246, 856 N.W.2d 295 (2014). The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests. *Id*. Cases considering this question have granted a change of name only when the substantial welfare of the child requires the name to be changed. *Id*. On appeal, a trial court's decision is reviewed de novo on the record. See *id*.

[14,15] In Nebraska, there is no preference for a surname—paternal or maternal—in name change cases; rather, the child's best interests is the sole consideration. *Id*. Courts review a list of nonexclusive factors to determine whether a change of surname is in the child's best interests. *Id*. These factors include (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's

- 435 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit. *Id*.

In the present case, the district court's order did not consider any of the foregoing factors or make a finding of Kaaden's best interests with respect to his surname. Upon our de novo review of the record, we observe that there was little evidence presented at trial as to changing Kaaden's name. Jeffery indicated that he wanted Kaaden to share his last name, and we note that Jeffery is now the custodial parent. Mandy testified that she did not want Kaaden's name to be changed, but she did not further elaborate. At not quite 3 years old, Kaaden was too young to express a preference or to appreciate a change in his surname. Neither parent is married nor has any other children, so there is no concern as to whether Kaaden will share a name as part of a family unit. There was no evidence as to how changing Kaaden's surname from Mandy's to Jeffery's would serve Kaaden's best interests. Therefore, based on the totality of the evidence, we conclude that Jeffery failed to establish that the substantial welfare of the child requires the name to be changed. Accordingly, we affirm the decision of the district court denying Jeffery's request.

## Contempt of Court

Jeffery argues that the fine imposed on Mandy for being in contempt of court was an abuse of discretion. We disagree with Jeffery's argument that the court should have imposed a fine greater than $50, but we find plain error in the fine as imposed.

- 436 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

The district court determined that the clear and convincing evidence established that Mandy was in willful contempt of the temporary order when she deprived Jeffery of his parenting time. The court therefore imposed a sanction of $50. There is no challenge on appeal to the finding that Mandy was in contempt of court; rather, the sole issue is whether the court abused its discretion in imposing a sanction of $50.

[16-18] A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). In contrast, a criminal sanction is punitive; the sentence is determinate and unconditional, and the contemnors do not carry the keys to their jail cells in their own pockets. *Id*. A court can impose criminal, or punitive, sanctions only if the proceedings afford the protections offered in a criminal proceeding. *Id*. A criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as civil contempt, because it lacks the procedural protections that the Constitution would demand in a criminal proceeding. *Sickler v. Sickler, supra*. In order for the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Id*.

- 437 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
STATE ON BEHALF OF KAADEN S. v. JEFFERY T.
Cite as 26 Neb. App. 421

In *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), the Nebraska Supreme Court found plain error in the trial court's imposition of a punitive sanction in a civil contempt proceeding. Specifically, the trial court held the father in contempt for failure to pay child support. The court ordered that unless the father paid the amount due, he was sentenced to 30 days in jail commencing April 1, 1989. The Supreme Court determined that the order ceased to be coercive on April 1, because the jail sentence was no longer subject to mitigation. If the child support amounts due were not paid by April 1, the father was required to serve a punitive 30-day sentence, regardless of whether the amounts were paid subsequent to that date, and thus, the father no longer would be "'holding the keys to his jail cell'" after April 1. *Id*. at 242, 475 N.W.2d at 528. The Supreme Court iterated that an unconditional penalty is criminal in nature because it is solely and exclusively punitive in character. *Id*.

[19,20] Relying upon *Maddux v. Maddux, supra*, this court has recognized that a fine is an appropriate sanction in a civil contempt proceeding so long as the contemnor may avoid the fine by complying with the court's order. See *Jessen v. Jessen*, 5 Neb. App. 914, 567 N.W.2d 612 (1997), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier, supra*. In contrast, an unconditional fine is not an appropriate sanction in a civil contempt proceeding because the contemnor is unable to avoid the fine through his or her conduct. *Id*.

In the present case, the district court imposed an unconditional fine upon Mandy. The court provided no method for Mandy to avoid the fine through her conduct, and thus, the sanction was punitive rather than coercive. Because the matter was tried as a civil contempt, a solely punitive sanction was improper. We therefore vacate the punitive sanction and remand the cause for imposition of a proper coercive sanction.

### Attorney Fees

Jeffery asserts that the district court's denial of his request for attorney fees was in error. We find no abuse of discretion.

In a paternity action, attorney fees are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Drew on behalf of Reed v. Reed*, 16 Neb. App. 905, 755 N.W.2d 420 (2008). Absent such an abuse, the award will be affirmed. *Id*.

The district court ordered that each party pay its own attorney fees and costs. We understand Jeffery's argument that Mandy's actions resulted in his incurring additional attorney fees which he otherwise would not have incurred. However, given the financial circumstances of the parties, we find that it was not an abuse of discretion for the court to order the parties to pay their own fees and costs.

## CONCLUSION

We affirm in part, vacate in part, and in part reverse and remand with directions as explained above.

Affirmed in part, vacated in part, and in part reversed and remanded with directions.