164 N.J. Super. 499 (1978)
397 A.2d 352
KARL ASCH, PLAINTIFF-APPELLANT,
v.
ROBIN ASCH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1978.
Decided December 26, 1978.
*500 Before Judges ALLCORN, SEIDMAN and BOTTER.
*501 Mr. Ronald S. Suss argued the cause for appellant (Messrs. Lieb, Kraus & Grispin, attorneys).
Mr. Gary L. Falkin argued the cause for respondent (Messrs. Franzblau & Falkin, attorneys).
The opinion of the court was delivered by BOTTER, J.A.D.
Plaintiff appeals from the denial of his motion to compel defendant, his former wife, to enroll their young daughter in a public school or in a private, nonsectarian school, at plaintiff's expense. Asserting that his daughter is Jewish, since he has always been a Jew and defendant had converted to Judaism prior to their marriage, plaintiff sought to prevent the enrollment of his daughter in a Catholic, parochial school beginning in September 1978. The trial judge ordered that the child could attend the parochial school "provided that said child shall not receive religious instruction." Plaintiff's applications for a stay of the trial judge's order were made and denied in the trial court and in this court.
The parties were married in early 1972 and were divorced in November 1976. Their only child, Meredith, became six years of age on November 23, 1978. Although Meredith lived with plaintiff for one year after the parties separated, she now lives with defendant, who has remarried. In their household are defendant's husband, two of his sons, age 10 and 11, of a former marriage, and defendant's other daughter, age 7.
The divorce judgment refers to the provisions of a separation agreement between the parties which gives both parents "joint custody" of Meredith. The divorce judgment orders that the parties perform the terms of the agreement. The agreement requires the parties to "confer with each other on all major matters affecting the general welfare of the child," but it contains no mechanism for resolving disputes between them. Obviously, there is no provision in the agreement that expressly governs the present controversy, although *502 appellant contends that the school arrangements unilaterally imposed by respondent run counter to the spirit of the provision that neither parent shall "alienate the child's affection for the other party."
Meredith attended a private, nonsectarian school on the nursery school and kindergarten level. Her father wanted to have her enter first grade at a nearby private school. He contends that enrolling Meredith at a Catholic parochial school "with explicit and implicit religious teachings and peer group pressures" would have the "inevitable" effect of directing her away from the religion into which she was born and would tend to weaken his relationship with her.
Defendant contends that she "is not sending Meredith to [the Catholic school] in order to obtain religious instruction * * *." She has expresed an educational basis for preferring the Catholic school over the private school chosen by plaintiff. Her additional reasons are that the Catholic school is within two blocks of their home and she wants Meredith to attend the same school that her other daughter and her husband's sons attend. Supporting her nonreligious purpose she has asserted, without contradictory proofs in the record:
The School has a fairly large percentage of nonCatholic children attending and has many more lay teachers on its faculty than it does Catholic nuns. There are, at present, only lay teachers instructing the first and second grades at the School. Religious instruction is not required and those children who do not choose to be instructed in religion have the choice, at that time, of going to the library, attending a study or receiving extra help, in any area it is needed during the time that the other children are receiving religious instruction.
Defendant has explained her reasons for not enrolling Meredith in the public school, and plaintiff does not insist upon her attending that school. Defendant has further certified that she and her husband "are presently seeking a new home in another town * * * where all the children can attend public school," and she anticipates moving "shortly." Her certification was dated July 25, 1978.
*503 This is not a case in which we are asked to choose between religions. Cf. Donahue v. Donahue, 142 N.J. Eq. 701 (E. & A. 1948). Defendant does not seek to raise Meredith in the Catholic faith, and the agreement for "joint custody" connotes that neither parent would interfere with their original choice of religion for their daughter without the consent of the other.[1] On parents' rights to educate their children in religious practices and beliefs, see Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); cf. Prince v. Massachusetts, 321 U.S. 158, 165, 64 S.Ct. 438, 441, 88 L.Ed. 645, 652 (1944).
Plaintiff contends that, despite the provision in the trial court's order that Meredith "shall not receive religious instruction," her attendance at a Catholic parochial school would, nevertheless, expose her to environmental influences inconsistent with the religion that he maintains was chosen for her by her parents. Cf. Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); West Virginia State Bd. of Ed. v. Barnette, 319 U.S. 624, 632-633, 63 S.Ct. 1178, 1182, 87 L.Ed. 1628, 1634-1635 (1943). Her mother's reply is that she is not sending Meredith to that *504 school for religious instruction and that Meredith will and, under the trial court's order, must be excused from religious classes.
We do not condemn the exposure of Meredith to the practices of a religion other than her own. Indeed, the separation agreement anticipated this by providing for visitation with the father on "Jewish religious holidays" as well as secular holidays, but with the mother on Christmas Eve, Christmas Day, Easter Sunday and Good Friday. The question is whether there is sufficient justification for or detriment in placing Meredith in a parochial school where, appellant contends, the prevalence of a different religious allegiance and customs will be a constant force upon her and where she would be conspicuously set apart from other students by not participating in religious classes and, possibly,[2] in other religious activities of the school's community.
Defendant has asserted a factual educational basis for objecting to the private school preferred by plaintiff. She has additional objections to the public school. On the record before us we canot weigh all of the factors that are involved, nor can we determine the validity of defendant's criticism of the private school favored by plaintiff. This issue was not decided by the trial judge since his view of the case made it unnecessary for him to do so.
We cannot accept the trial judge's analysis of the issues before him. He gave no weight to the provision for "joint custody" and allowed undue weight to be given to the mother's unilateral decision. He also attributed no significance to the religious preference of both parents when Meredith was born and defendant's disclaimer of an intention to direct Meredith's religious beliefs toward Catholicism.
Thus, we cannot resolve the issues posed in this case on the record before us and must remand the case to the *505 trial court for amplification. We do not see any harm in allowing Meredith to continue in her present school during the remand or a timely resolution of the dispute by alternate means. As noted above defendant has stated her intention to move to a community where all children can attend a more acceptable public school. This solution would satisfy plaintiff and resolve the dispute.
On the record before us the choice of schools is somewhat limited by the distances involved. On remand the parties should be permitted to compare the educational opportunities afforded by competing schools and to offer proofs on their other advantages and disadvantages to Meredith. The parties may offer evidence on the extent to which Meredith will be exposed to Catholic religious practices and influences in her present school. Our discussion of the principal areas of dispute is not intended to preclude the admission of other relevant evidence.
It is axiomatic that the court should seek to advance the best interests of the child where her parents are unable to agree on the course to be followed. This goal gives us little guidance, however, in a case such as this where a variety of factors and interests must be considered. The courts cannot choose between religions; they cannot prevent exposure to competing and pulling religious ideas and rituals. But the courts should seek to minimize, if possible, conflicting pressures placed upon a child and to give effect to the reasonable agreement and expectations of the parents concerning the child's religious upbringing before their marital relationship foundered, subject to the predominant objective of serving the child's welfare comprehensively.
We will allow the judgment to stand as a temporary order. However, we remand the case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Should either party file an appeal from the final judgment entered after the hearing, that party shall do so promptly and shall move before this court to establish an accelerated schedule for the appeal.
NOTES
[1] The few decisions dealing with "joint custody" tell us little of the significance of that provision. See Zinni v. Zinni, 103 R.I. 417, 238 A.2d 373 (Sup. Ct. 1968); Loebenberg v. Loebenberg, 85 R.I. 115, 127 A.2d 500 (Sup. Ct. 1956); Winn v. Winn, 143 Cal. App.2d 184, 299 P.2d 721 (D. Ct. App. 1956); Perotti v. Perotti, 355 N.Y.S.2d 68 (Sup. Ct. 1974). In Perotti a text on separation agreements is quoted as defining the status of joint custody as one in which a child resides primarily with one parent but both parents have "joint control of its care, upbringing and education, and equal voice in decisions pertaining to its health, religious training, vacations, trips and the choice of schools, summer camps, etc."

We need not define the legal limits of the term in this case since both parties tacitly acknowledge that neither has a controlling right to choose a school for Meredith, and defendant does not seek to raise Meredith as a Catholic or to prevent plaintiff from raising her as a Jew.
[2] The record is not fully developed. The case was decided on affidavits only.