277 N.J. Super. 213 (1994)
649 A.2d 418
THOMAS McCOWN, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
PATRICIA McCOWN, A/K/A PATRICIA M. MOSKOWITZ, DEFENDANT-APPELLANT/CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1994.
Decided November 16, 1994.
*214 Before Judges VILLANUEVA, WEFING and BILDER.
Harold Goldman argued the cause for appellant/cross-respondent (Goldman, Zolotorofe & Corcoran, attorneys; Mr. Goldman of counsel and on the brief).
George Milanos argued the cause for respondent/cross-appellant (Milanos & Solimano, attorneys; Mr. Milanos of counsel and on the brief).
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
This is an appeal and cross-appeal from post-judgment custodial orders of the Family Part involving education and visitation.
Stripped of all adjectives and characterizations, the essential facts can be stated rather simply. The parties were divorced on April 22, 1991 after a 12 year marriage which produced two children, Amy born April 4, 1985 and Katherine born March 14, 1988. The Judgment of Divorce provided for joint legal custody with physical custody in the mother. Liberal visitation was provided the father in the form of alternate weekends, one weeknight per week, alternate major holidays (Christmas, Easter, Memorial Day, July 4th, Labor Day, and Thanksgiving) and birthdays, and alternate splitting of the Christmas-New Years holiday. All major decisions affecting the children's health, education and well-being were to be made by consensus of both parents. Each of the parties covenanted not to do anything to diminish the natural *215 affection that exists between each of them and the children, and to conduct themselves in a manner so as to promote an affectional[1] relationship between the children and each of the parents. Specific agreements were made as to an equal division of private school tuition at the Bede School during the following three years  for both children during the 1991-1992 school year and for Katherine during the following 1992-1993 and 1993-1994 school years.
Prior to the divorce, and really for all their lives, the parties had been Protestants and raised the children in the same religion. Like many Americans, their attendance at church and participation in church activities could be described as sporadic  at times being more active, at times less active, and varying among a number of the more familiar Protestant denominations. Both children were baptized in the Presbyterian church. Christmas and Easter were celebrated.
Although they continued to share the same residence, apparently the parties physically separated some months prior to the divorce, perhaps in July 1989.[2] At about that time defendant Patricia became interested in Judaism. In May 1991, a month after the divorce, she moved to Teaneck, and she, in her words, "started learning about Judaism and practicing it in her home." In October 1991 she converted to Orthodox Judaism and in February 1992, over the objections of plaintiff father[3], converted *216 her daughters to the same faith.[4] In June 1992 Patricia became engaged to Leonard Moskowitz, an observant Orthodox Jew, and August 30, 1992 they were married.
Patricia and the two girls now live in Teaneck as part of an observant practicing Orthodox Jewish family which consists of Leonard, Patricia, Amy, Katherine, and Leonard's three children from a previous marriage, 11 year old Judah, 10 year old Eliza, and 7 year old Avia.[5] In his testimony, Leonard described Judaism as "not just a religion" but "a culture". "We live a Jewish lifestyle in a Jewish community. And the community is very supportive although we're very active in the outside world too and part of being a Jew is maintaining your Jewish identity in the outside world." They eat kosher food, observe the sabbath, eat their sabbath meals together on Friday night, and go to synagogue together on Saturday. Judah, Eliza and Avia attend a Jewish day school in Paramus.
The critical issues between the parties came to a head in a February 24, 1992 letter from Patricia's attorney to the plaintiff father's attorney advising him of the conversion of the two girls the previous day and seeking modification of the Property Settlement Agreement as it relates to visitation and education. That letter, in relevant part, clearly sets forth the parameters of the dispute.

Visitation  As Ms. McCown and the children are practicing observant Orthodox Jews, I want to modify visitation so as to permit the children to remain with Ms. McCown on the Sabbath and religious holidays.
When the children are visiting with Mr. McCown, I would want your client's assurances that he would take no action that would compel the children to violate the requisite dietary laws (Kasruth), and milk and other tenets of the Jewish religion.

*217 I would suggest that Mr. McCown refrain from taking the girls to church.

Education  Ms. McCown would like to enroll the children in a Hebrew Day School in the fall of 1992.
Had he acceded to the attorney's demands, the father would have ratified and endorsed the unilaterally performed conversion and forsaken his right to spend weekends with his children. He would also have abandoned any right that the children might have to continue to understand the culture of their father and their maternal and paternal forebears. Depending on the confluence of holidays, he would also have surrendered his right to spend Christian and national holidays and birthdays with the children.
Following plenary hearings, on November 15, 1993 the trial judge issued an order which did the following:
The defendant was permitted to continue to raise Katherine and Amy in her home according to the Orthodox Jewish religion.
The children could follow the cultural household routine and religious practices of plaintiff when they are with him, provided they shall not be enrolled in a Christian Sunday School or other formal religious educational program.
The children were to continue to attend public or private non-religious school  i.e. the application to enroll them in a special Hebrew school in lieu thereof was denied.
Visitation was modified to permit the children to spend the major Jewish religious holidays with their mother  those holidays being defined as Rosh Hashanah (2 days), Yom Kippur, Sukkot (2 days) Simchat Torah, Chanukah (first day), Purim, and Passover (first 2 days)  and to have the major Christian holidays  Easter and Christmas  with their father. In the event of a conflict between these holidays, the Jewish holidays are to take precedence on the first such occasion, and thereafter the precedence would alternate.
Defendant mother appeals from so much of the order as denied her the right to enroll the girls in the Yeshiva.[6] Plaintiff father's cross-appeal seems to appeal from so much of the order as permits defendant to continue to raise the children in her home according to the Orthodox Jewish religion but suggests "in the alternative the trial court's decision denying the children's enrollment in a *218 Jewish day school should be affirmed."[7] We are satisfied that the sole issue raised on the appeal and cross-appeal is that part of the order of November 15, 1993 which denies defendant's application to have the children attend a Yeshiva instead of a public or non-religious private school.

I.
The touchstone of the court's role in this difficult and unseemly dispute is found in Asch v. Asch, 164 N.J. Super. 499, 397 A.2d 352 (App.Div. 1978), where Judge Botter said:
It is axiomatic that the court should seek to advance the best interests of the child where her parents are unable to agree on the course to be followed. This goal gives us little guidance, however, in a case such as this where a variety of factors and interests must be considered. The courts cannot choose between religions; they cannot prevent exposure to competing and pulling religious ideas and rituals. But the courts should seek to minimize, if possible, conflicting pressures placed upon a child and to give effect to the reasonable agreement and expectations of the parents concerning the child's religious upbringing before their marital relationship foundered, subject to the predominant objective of serving the child's welfare comprehensively.
[Id. at 505, 397 A.2d 352.]
In Beck v. Beck, 86 N.J. 480, 432 A.2d 63 (1981), Justice Clifford gives us some guidance as to what is meant by serving the child's welfare comprehensively. Children should have equal access to both parents, id. at 486, 432 A.2d 63, the severance of the ties to either parent is contrary to the child's best interest. Id. at 487, 432 A.2d 63. The child should be able to recognize both parents as sources of security and love and should wish to continue both relationships. Id. at 498, 432 A.2d 63. To put it succinctly, the wife is divorced from the husband  not the child from the parents  or either of them.
When the parties brought these two girls into the world they undertook an obligation which was lasting  and joint and several. As so often happens, the innocent children are being made pawns in the adult power struggle. The religious choice which the *219 mother has made need not be a source of pain to the children. They may be well served by a broadening multi-cultural experience; they can only be hurt by a fractious inter-cultural contest.
From an examination of the record we are satisfied that the trial judge's findings are supported by sufficient credible evidence in the record, see Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974), and that his conclusions and the orders he has entered are reasonable and proper methods of seeking to achieve the best interests of the children. Contrary to defendant's assertions, the trial judge had every right to accept the evidence of Dr. Greif and her conclusion that attendance at the Yeshiva would only serve to isolate the children from their father.
At oral argument plaintiff father expressed a concern that the provision in the order of June 1, 1992 that "Defendant shall have the right to raise the minor children, [K]atherine and Amy, in her home according to the Orthodox Jewish religion" and the provision in the order of November 15, 1993 that "The defendant may continue to raise the minor children of the marriage, Katherine and Amy, in her home according to the Orthodox Jewish religion" might be misunderstood, particularly by the children, as representing judicial approval of their conversion or even as a judicial direction that they are to be raised in the Orthodox Jewish religion. Neither we, nor the courts below, approve nor disapprove of the conversion. The courts do not choose between religions, see Asch v. Asch, supra, and entertain no view in that regard. We do no more than seek to establish secular rules to minimize the conflicting pressures placed on the children and permit them to steer a course between the conflicting views and beliefs of their parents. This course hopefully, in furtherance of our paramount interest in the best welfare of the children and subject to that interest, will give effect to the legitimate expectations of each of the parents with respect to their children's upbringing and the legitimate right of the children to understand their heritage. The orders which we affirm endorse neither the religion nor the culture of either parent but are intended to insure *220 that the children have the opportunity to participate in the cultural household routine and religious practices of both parents.
Affirmed.
NOTES
[1] Although the scrivener employed the term "affectional" in the agreement, we entertain no doubt the parties meant "affectionate".
[2] Dr. Kranzler's report says July 1989; Dr. Greif's says July 1990. We are unable to find any other references in the record we have been furnished. In view of the 18 month requirement to establish a ground under the statute, the July 1989 date is probably correct.
[3] There is no evidence of animus toward Judaism, merely a lack of knowledge or understanding that would permit an intelligent decision with respect to such a major change. According to defendant, the father's position was "I don't know anything about Judaism. I can't agree."
[4] Apparently the act of conversion involved the issuance or statement of a decision or a decree by a Rabbinical court.
[5] Mr. Moskowitz has shared custody of the three children with his former wife. He testified: "They spend half of their time with their mother and they spend half of their time with me."
[6] Although the notice of appeal refers to other provisions of the orders being appealed from, her argument is limited this sole issue. Appeal from any other aspect of the orders is therefore considered abandoned.
[7] Plaintiff also essentially limits his arguments to the school issue and is deemed to have abandoned all other issues.