**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1187-21

DANIEL HUDSPITH,

    Plaintiff-Appellant,

v.

BRITTANY FROYSLAND,

    Defendant-Respondent.

_____

Submitted September 20, 2022 – Decided October 6, 2022

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FD-14-0141-20.

Ziegler, Resnick & Epstein, attorneys for appellant (Steven M. Resnick, on the briefs).

DeTommaso Law Group, LLC, attorneys for respondent (Michael J. DeTomasso and Gregory A. Pasler, on the brief).

PER CURIAM

Plaintiff Daniel Hudspith appeals from a Family Part order that denied his motion to enroll his then five-year-old daughter, S.H.,[1] at St. Therese School, located in Succasunna, and directed that his daughter shall remain enrolled in Riverview Elementary School (Riverview) in Denville. We affirm.

We take the following facts from the record. Plaintiff and defendant lived together but were not married. Their daughter was born in November 2015. The parties separated in September 2019. At that time, defendant sought and obtained a temporary restraining order (TRO) against plaintiff pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. In October 2019, the parties agreed to a consent order for civil restraints that established custody, parenting time, and child support obligations and the domestic violence proceeding was dismissed at defendant's request. The parties agreed to share joint legal custody of their daughter and for plaintiff to have parenting time one week on Friday, Saturday, and Sunday, and the next week on Wednesday and Thursday. That parenting time schedule was followed except for a short period after plaintiff returned from an Air Force deployment in Jordan.

In November 2019, the parties amended the consent order and designated defendant as the parent of primary residence (PPR) and plaintiff as the parent of

---

[1] We refer to the parties' daughter by initials to protect her privacy.

A-1187-21

alternative residence (PAR).  The order permitted defendant to continue residing in plaintiff's home in Long Valley while plaintiff was deployed with the Air Force.  During this time, S.H. was enrolled in pre-school at the Goddard School.  After plaintiff returned from deployment, defendant moved to Mount Arlington to allow S.H. to finish pre-school and then to Denville where defendant now resides.

In June 2021, defendant filed a motion regarding financial issues and to enforce litigant's rights.  Plaintiff filed a cross-motion to permit him to enroll S.H. (then five years old) at St. Therese Catholic School and to expand his parenting time.  Plaintiff also filed two unsuccessful emergent applications to have his cross-motion decided before school began.  The motions were adjourned to October 19, 2021.

On September 17, 2021, the trial court granted plaintiff's third emergent application to compel defendant to sign a non-retaining party statement of understanding required by plaintiff's first expert, Mark Singer, Ed.D. and ordered defendant to attend an appointment with him.  Plaintiff retained a new expert, Barry A. Katz, Ph.D., a licensed psychologist.

Dr. Katz conducted a child best interest evaluation concerning the choice of school.  He performed forensic interviews of the parties and S.H. and issued

3

a report that recommended that S.H. attend St. Therese School, "where she will have greater ease of access from across the homes, as well as, having the benefit [of] an education that is in line with both parents' religious practices and values."

The court conducted a plenary hearing on November 10, 2021. By that time, S.H. had already started kindergarten at Riverview. Plaintiff claimed that without his consent defendant enrolled S.H. at Riverview in May 2021.

The parties and Dr. Katz testified. Dr. Katz was recognized as an expert in psychology and his best interest evaluation report and letter correcting the report were admitted in evidence.

Dr. Katz testified regarding what he deemed relevant to school choice. As to stability, he noted that plaintiff believed that his home life was more "stable" because he owns his home, whereas defendant had moved three times in the last few years and had issues affording the cost of her rental. Plaintiff believed that attending St. Therese would be a constant in S.H.'s life no matter where she lives. Dr. Katz acknowledged that defendant "has no plans to move again anytime in the future" and that she stated that she can afford her current home. On cross-examination, Dr. Katz agreed that there was nothing stopping plaintiff from selling his home and moving "tomorrow."

4

Dr. Katz considered the fact that both parties want to raise S.H. Catholic, and that is more readily available at St. Therese, whereas if she attended Riverview, S.H. would have to take Confraternity of Christian Doctrine (CCD) classes.[2] S.H. was already baptized and attended St. Therese for orientation. Plaintiff is a parishioner of St. Therese, attended school there, and the parties took S.H. to church there. Defendant argued that S.H. did not need to go to parochial school to receive a religious education. On cross-examination, Dr. Katz agreed that S.H. could receive religious education without attending St. Therese. Plaintiff likewise admitted that S.H. could receive a Catholic education without attending St. Therese. Defendant testified that the parties always planned on S.H. to attend public schools.

Defendant testified that she is current on her rent and can afford her residence but paying for tuition at St. Therese would be a financial hardship. Defendant also paid for S.H.'s after-school activities. Plaintiff contended that the cost should be split equally, but on appeal now argues that cost is irrelevant and he is offering to pay for the entire cost of St. Therese's tuition if necessary.

---

[2] CCD classes educate children about the Catholic religion. See Feldman v. Feldman, 378 N.J. Super. 83, 87 (App. Div. 2005) (briefly discussing CCD classes).

Defendant asserted that plaintiff enrolled S.H. at St. Therese without discussing it with her and listed his fiancé as a contact instead of defendant. Plaintiff responded that he only took S.H. to St. Therese for orientation to reserve her spot and later included defendant as a contact person.

Defendant alleged abuse by plaintiff. Dr. Katz viewed questioning S.H. about the alleged abuse to be alienating.[3]

Dr. Katz considered the travel time difference between the schools. Plaintiff lives in Long Valley, where the parties lived together before they separated. Defendant now lives in Denville. The drive from plaintiff's home to Riverview is forty-five minutes each way, whereas St. Therese is roughly equidistant from the parties' homes, with travel time for each being about twenty-five minutes. Plaintiff argued the longer travel time alienates him from S.H. and limits his time with her. Defendant claimed it is only twenty to twenty-five minutes from Long Valley to Denville. She also contended that plaintiff could move into his father's home in Mount Arlington, which is closer. Plaintiff responded that his father's home is not set up for S.H. to live there.

---

[3] Although notarized letters from defendant and her mother stated that the allegations were falsified, defendant maintained in her interviews that the incidents were real. She claimed that plaintiff's father asked her to dismiss the TRO.

A-1187-21

School starts at St. Therese at 7:55 a.m. and at Riverview at 8:40 a.m. Dr. Katz noted that S.H. expressed she felt tired when she got to school after driving from her father's home to Riverview. Defendant testified that S.H. never expressed being tired to her.

Defendant emphasized that Riverview has a psychologist on staff while St. Therese does not. Riverview also had significantly smaller class size. Plaintiff noted that St. Therese has an aide for its kindergarten class and that its student body is more diverse, consisting of students from other areas of the state. These issues were not determining factors for Dr. Katz as he was not concerned by the respective class sizes and saw no need for S.H. to receive therapy.

S.H. expressed positive feelings about Riverview, had friends there, and participated in cheerleading and Girl Scouts activities at Riverview. Defendant believed S.H. should remain enrolled at Riverview. Plaintiff testified that S.H. attended a two-day orientation at St. Therese and has friends there. Dr. Katz opined that S.H. "seemed pretty comfortable" with attending either school.

Overall, Dr. Katz concluded that S.H. "would excel in either school." He acknowledged that both schools had good reputations and their quality was relatively similar. Plaintiff claimed that he would "give the edge to St. Therese"

A-1187-21

in terms of quality but acknowledged there is "not a massive difference between the level of education."

Dr. Katz found that "the distance from [Riverview] does impact upon [S.H.'s] capacity for learning, as well as the time with her father[.]" He also found defendant's stability to be questionable because of her history of "allegations" against plaintiff and moving to get further away from him. Dr. Katz concluded that it was in S.H.'s best interests to be transferred to St. Therese as soon as possible, and that she would have no issues adjusting to the change.

On November 19, 2021, the judge issued an order and nineteen-page statement of reasons that denied plaintiff's motion to enroll S.H. at St. Therese and directed that she shall remain enrolled in Riverview. The order also denied the motions in limine filed by plaintiff and defendant.

In his detailed statement of reasons, the judge engaged in a fulsome analysis of the fourteen "best interests" factors set forth in N.J.S.A. 9:2-4[4] and

---

[4]  N.J.S.A. 9:2-4 enumerates the following custody factors:  (1) the parents' ability to agree, communicate and cooperate in matters relating to the child; (2) the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; (3) the interaction and relationship of the child with its parents and siblings; (4) the history of domestic violence, if any; (5) the safety of the child and the safety of either parent from physical abuse by the other parent; (6) the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; (7)

A-1187-21

the reasoning expressed in <u>Levine v. Levine</u>, 322 N.J. Super. 558 (App. Div. 1999) and made the following findings.

On the first factor, the judge found that the parties were generally unable to agree on matters concerning S.H. and "made unilateral decisions regarding their preferred school for the minor child." "Further, [defendant] has made allegations of abuse regarding herself and the minor child, while [plaintiff] asserts that [defendant] has previously manufactured allegations of abuse and testified that he initially feared that [defendant] would retaliate against him." Although the parties agreed to raise S.H. Catholic, they could not agree on the school she should attend.

On the second factor, the judge found the parties "demonstrate a sufficient willingness to accept custody and parenting time." They historically abided by the parenting time schedule and testified that they would help S.H. participate in activities regardless of which school she attended. On the third factor, the judge found S.H. had positive interactions with both parents. Similarly, on the

---

the needs of the child; (8) the stability of the home environment offered; (9) the quality and continuity of the child's education; (10) the fitness of the parents; (11) the geographical proximity of the parents' homes; (12) the extent and quality of the time spent with the child prior to or subsequent to the separation; (13) the parents' employment responsibilities; and (14) the age and number of the children.

twelfth factor, the judge found that S.H. enjoys quality time with both parents but had primarily resided with defendant in Denville since defendant became PPR in October 2019.

On the fourth factor, the judge found there was no history of domestic violence that would impact its decision. Although there was a prior history of domestic violence, the parties agreed to dissolve the previous TRO and replace it with a consent order for civil restraints. The court found the allegations that plaintiff abused S.H. were unsubstantiated.

On the fifth factor, the judge found no evidence of harm or threats of harm to S.H. Despite the previous TRO and allegations of abuse, the parties demonstrated a desire to keep her safe.

On the sixth factor, the judge found S.H. was too young to express an opinion about her choice of school and rejected any evidence indicating a preference on her part. He found S.H.'s statements to Dr. Katz to be credible except for expressing being tired from the commute from her father's house to Riverview.

On the seventh factor, the judge found that Riverview better served S.H.'s needs. S.H. did not exhibit any learning disabilities and according to Dr. Katz, her speech acquisition skills are within normal range. The judge found no

10

meaningful difference between the education and activities offered at either school, except that St. Therese lacks an on-site psychologist. He noted that Dr. Katz opined that S.H. would excel at either school. The judge also found that a Catholic education could be achieved no matter which school she attended, finding the difference of taking CCD classes after school to be trivial. The judge found the smaller class size, the on-site child psychologist, and the fact that S.H. participates in activities and has friendships at Riverview, weighed in its favor.

On the eighth factor, the judge found that both parties provided a stable home for S.H. He found nothing to suggest that defendant cannot continue to rent her residence in Denville and that she intends to stay there indefinitely. The court judge found defendant's testimony about her prior moves "very credible and honest" and that her risk of relocation was "minimal."

On the ninth factor, the judge found that both schools would maintain the quality and continuity of S.H.'s education. He noted that Dr. Katz acknowledged both schools have good reputations and that S.H. would fit in at either school. The judge noted that S.H. primarily lives in Denville, and attendance at Riverview will "allow [her] to maintain and develop peer relationships with fellow students who live in the same community and maintain the continuity of

11

friends."  The judge found attending Riverview "will better maintain the quality and continuity of [S.H.'s] education."

On the tenth factor, the judge found that both parents demonstrated their fitness, and that S.H. expressed a positive relationship with them both.  He also found that both parties are gainfully employed and can provide for S.H. but this factor was not dispositive.  Similarly, on the thirteenth factor, the judge reiterated that both parties are gainfully employed and there was no evidence that their jobs would interfere with time spent with S.H.

On the eleventh factor, the judge found plaintiff's commute to Denville is forty-five minutes, and his commute to St. Therese is twenty to twenty-five minutes.  He did not find it credible that S.H. would have to wake up much earlier to attend Riverview because the school starts later than St. Therese, and if S.H. were transferred to St. Therese, it would make defendant's commute longer.  (Pa40).  The judge gave limited weight to this factor.

Finally, on the fourteenth factor, the court found that S.H. was the parties' only child, who was about to turn six.

Considering the reasoning in Levine, the judge noted that the choice of school for a minor child is "inherently subjective" but that it was in S.H.'s best interests to continue attending Riverview.  The judge mentioned that plaintiff

12

"failed to demonstrate" that S.H.'s schooling at Riverview did not serve her best interests. The judge noted that Dr. Katz did not find a "considerable difference between the programs and services offered by the schools."

The judge distinguished certain facts in Levine, explaining that his decision was not based "on the establishment of [S.H.] in the current school nor relationships formed within the last six weeks of her attendance." Instead, the judge found it was in S.H.'s best interests to remain at Riverview, which would not impose the financial burden of tuition at St. Therese. Both schools were good and S.H. will excel in either school. Attending Riverview will "allow [S.H.] to maintain and develop peer relationships with fellow students who live in the same community and maintain the continuity of friends." Finally, S.H. will be able to attend CCD classes while attending Riverview. Based on these findings, the judge determined that attending Riverview was in S.H.'s best interests.

The parties filed cross-applications for an award of counsel fees. On December 3, 2021, the judge denied defendant's application and granted plaintiff's application in part, awarding him $5,918.50. The parties have not appealed from that order.

This appeal followed.  Plaintiff raises the following points for our consideration:

POINT ONE

THE TRIAL COURT ERRED BY RELYING ON N.J.S.A. 9:2-4 AS A BASIS TO DETERMINE THE SCHOOL ATTENDANCE ISSUE.

POINT TWO

IT IS IN THE CHILD'S BEST INTEREST FOR HER TO ATTEND ST. THERESE SCHOOL.

POINT THREE

THE TRIAL COURT'S ANALYSIS OF THE EVIDENCE RECORD AT TRIAL WAS FLAWED AND DID NOT SUPPORT IT DENYING [PLAINTIFF'S] APPLICATION FOR THE CHILD TO ATTEND THE ST. THERESE SCHOOL SYSTEM.

A. The trial court erred in its analyses of Dr. Katz's report and testimony.

B. The trial court improperly placed a higher burden of proof on [plaintiff] and used the wrong legal burden analysis regarding the school choice issue.

C. The trial court did not properly consider all the facts of the matter, especially the undisputed facts.

D. The trial court erred when it relied on incorrect facts from the trial record, evidence not in the

14

trial record, and speculative assumptions, which all led to findings not supported by the record.

We affirm substantially for the reasons expressed by Judge Vijayant Pawar in his comprehensive statement of reasons. We add the following comments.

"We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012). To that end, we accord "great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). "The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "Appellate courts owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall, 222 N.J. at 428).

An appellate court will not overturn a Family Part judge's decision "unless the trial court's factual findings 'went so wide of the mark that a mistake must

15

have been made.'" N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review legal issues de novo. R.K. v. F.K., 437 N.J. Super. 58, 61 (App. Div. 2014).

The factfinder is free to accept all, part, or none of an expert's testimony, Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002), "and may do so even if that testimony is unrebutted by any other evidence," State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004). "Indeed, a judge is not obligated to accept an expert's opinion, even if the expert was 'impressive.'" M.J.K., 369 N.J. Super. at 549 (quoting State v. Carpenter, 268 N.J. Super. 378, 383 (App. Div. 1993)). The factfinder determines the weight to be given to the expert testimony. N.J. Div. of Youth & Fam. Servs. v. D.M., 414 N.J. Super. 56, 74 (App. Div. 2010).

When choosing a school for a minor child from competing school districts, the court considers the "best interests of the child." Levine, 322 N.J. Super. at 566. In Levine, we explained the subjective nature of that evaluation:

> In the context of the best interests of a child, any evaluation of a school district is inherently subjective. Just as a student cannot be summed up by IQ, verbal skills or mathematical aptitude, a school is more than its teacher-student ratio or State ranking. The age of its buildings, the number of computers or books in its library and the size of its gymnasium are not determinative of the best interest of an individual child during his or her school years. Equally, if not more important, are peer relationships, the continuity of friends and an emotional attachment to school and community that will hopefully stimulate intelligence and growth to expand opportunity.
>
> [Id. at 567.]

Plaintiff argues that in relying on Levine, the judge improperly shifted the burden of proof onto him to prove that Riverview did not serve S.H.'s best interests. We disagree. The sound reasoning in Levine, which involved a school choice issue, was appropriately relied upon by the judge.

While the judge stated that plaintiff "failed to demonstrate" that S.H.'s schooling at Riverview did not serve her best interests, we do not view that statement as an indication that the judge shifted the burden of proof to plaintiff. The comment merely reflected the judge's overall determination that attending

17

Riverview was in S.H.'s best interests.  Moreover, we used similar language in Levine, stating "there is an absence of proof to suggest that [the child's] best interests are not being served in the South Orange school district."  Id. at 566.

The best interests of the child are the primary and overarching consideration in deciding a dispute over which school a child should attend.  Id. at 565-66; Asch v. Asch, 164 N.J. Super. 499, 505 (App. Div. 1978).  The best interests factors set forth in N.J.S.A. 9:2-4 are not limited to initial custody awards.  They have been applied when determining whether relocation is in a child's best interests.  Bisbing v. Bisbing, 230 N.J. 309, 335 (2017).  They have also been applied in determining if home-schooling is in the best interests of the children.  R.K., 437 N.J. Super. at 67-68.  We discern no error in considering the factors enumerated in N.J.S.A. 9:2-4 in determining whether enrollment in Riverview or St. Therese is in the child's best interests.

The parties share joint legal custody.  While defendant's designation as PPR did not afford her unilateral authority to make school choice decisions, S.H. primarily resides with defendant in Denville (plaintiff has parenting time five days each two-week cycle).  Attending school activities and developing and maintaining peer relationships with fellow students that live in Denville were thus properly considered and given weight by the judge.

Judge Pawar carefully considered the parties' testimony and Dr. Katz's report and expert testimony. His findings are supported by substantial, credible evidence in the record. His legal analysis is consonant with applicable law. We discern no basis to disturb the decision that S.H. remain enrolled at Riverview.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-1187-21